IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARVIN J. PETERS,                    )
                                     )
            Plaintiff,               )
                                     )
     v.                              )      CIVIL ACTION NO. 1:09cv680-WC
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Plaintiff Marvin J. Peters applied for disability insurance benefits under Title II of the

Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.*  His application was denied at the

initial administrative level.  Plaintiff then requested and received a hearing before an

Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claims.

(Tr. 10-17).  The Appeals Council rejected a subsequent request for review.  The ALJ's

decision consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c),

both parties have consented to the conduct of all proceedings and entry of a final judgment

---

[1]      Pursuant to the Social Security Independence and Program Improvements Act of
1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human
Services with respect to Social Security matters were transferred to the Commissioner of Social
Security.

by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #9);

Def.'s Consent to Jurisdiction (Doc. #8).  Based on the Court's review of the record and the

briefs of the parties, the Court REVERSES the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2]      A "physical or mental impairment" is one resulting from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an

---

[3]   *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-three years old at the time of the hearing before the ALJ.  Tr. 23.
Plaintiff completed his high school education.  Tr. 25.  Plaintiff's past relevant work
experience includes work as a "winding machine operator."  Tr. 15, 27, 33.  Following the
administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not
engaged in substantial gainful activity since June 2, 2006, the alleged onset date of his
disability (Step 1).  Tr. 43.  At Step 2, the ALJ found that Plaintiff suffers from the following
severe impairments: "left rotator cuff tear requiring surgical correction times four and mild
subluxation of both hands."  Tr. 12.  The ALJ then found that Plaintiff "does not have an
impairment or combination of impairments that meets or medically equals one of the listed
impairments . . . ."  (Step 3) Tr. 13.  Next, the ALJ found that Plaintiff has the RFC to
"perform light work . . . except he cannot work in tasks requiring him to perform overhead
reaching, reaching/pushing/pulling anything in excess of 20 pounds occasionally and 10
pounds frequently.  He cannot climb ropes, ladders or scaffolds, and cannot work around
hazardous moving equipment.   He can perform bilateral gross manipulation only
occasionally."  Tr. 13.  Given this RFC, the ALJ determined that Plaintiff can not perform
any past relevant work (Step 4).  Tr. 15.  Next, the ALJ found that, given Plaintiff's age,
education, work experience, and RFC, and after consulting with a vocational expert, "there
are jobs that exist in significant numbers in the national economy" which Plaintiff can
perform.  (Step 5) Tr. 15.  The ALJ found that such occupations include: "Counter Clerk,"

"Security Guard," and "Information Clerk." Tr. 16. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 2, 2006, through the date of this decision." Tr. 16.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff alleges three errors requiring reversal of the ALJ's decision: (1) "the ALJ erred by failing to properly evaluate the opinion of Dr. Norwood;" (2) "the ALJ erred in finding that [Plaintiff] retained the residual functional capacity to perform light work;" and (3) "the ALJ erred by failing to pose a complete hypothetical to the Vocational Expert." Pl.'s Brief (Doc. #13) at 1.

## V.   DISCUSSION

### A.   The ALJ's treatment of Plaintiff's treating source opinion.

Plaintiff claims that, "while the ALJ gave substantial weight to the opinion of Dr. Norwood [Plaintiff's treating physician with respect to his shoulder], she selectively quoted from Dr. Norwood's opinion to find that [Plaintiff] retained the [RFC] to perform light work." Pl.'s Brief (Doc. #13) at 8. Plaintiff faults the ALJ for, essentially, failing to address Dr. Norwood's opinion, rendered in February, 2008, that Plaintiff is unable to do certain activities which are encompassed by the RFC later-announced by the ALJ. Pl.'s Brief (Doc. #13) at 8. Defendant appears to contend that the ALJ properly considered Dr. Norwood's opinion and - apparently by implication - resolved any conflict between that opinion and

other evidence in the record.  Def.'s Brief (Doc. #14) at 12-13.

The record establishes that Dr. Norwood has been Plaintiff's treating physician respecting his shoulder for a number of years.  Dr. Norwood placed Plaintiff at maximum medical improvement, with respect to his left shoulder, in December, 2006, and hence recommended a functional capacity evaluation (FCE).  Tr. 206.  The evaluation took place in January, 2007.  Tr. 177-199.  Dr. Norwood had a follow-up visit with Plaintiff after the evaluation.  The treatment notes from this evaluation reflect Dr. Norwood's opinion that, as of January 12, 2007, Plaintiff could "work within the restrictions of his FCE."  Tr. 203.  In another follow-up visit, in March of 2007, Dr. Norwood again confirmed that Plaintiff could "work within the restrictions of his FCE."  Tr. 327.  In February, 2008, Dr. Norwood saw Plaintiff on a follow-up visit almost one year after his last visit and approximately twenty months after his fourth shoulder surgery.  Tr. 335.  During this visit, Dr. Norwood noted apparent deterioration in Plaintiff's condition and abilities, including significant restriction of his range of motion.  Dr. Norwood attributed this more severe restriction to "scar tissue in the joint tightening up."  Tr. 335.  Dr. Norwood further stated as follows:

> Since he was seen last time, his range of motion has decreased and his symptoms have increased due to his decreased range of motion.  He can do less things with his shoulder than he could.  So, basically without doing anything more substantial to his shoulder, he cannot do overhead lifting.  He cannot climb.  He cannot do repetitive pushing or pulling activities.  He cannot do any lifting with his left arm.  I would think that would significantly limit his abilities.  The synopsis of this is that he has not improved, and if anything, he is worse than he was. . . .  Hopefully this helps him with his situation as far as work and understanding his current status.

7

Tr. 335.  This report marks the last evidence of Dr. Norwood's observation of Plaintiff in the record.  Hence, by any objective measure, the most recent opinion by Plaintiff's treating physician about Plaintiff's ability to perform certain functional movements involving his shoulder is both extremely restrictive and pessimistic about the prospect of Plaintiff's condition improving.

Despite Dr. Norwood's opinion, the ALJ determined that Plaintiff retains the RFC to "perform light work . . . except he cannot work in tasks requiring him to perform overhead reaching, reaching/pushing/pulling anything in excess of 20 pounds occasionally and 10 pounds frequently."  Tr. 13.  According to the Agency,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).  The additional restrictions incorporated by the ALJ into Plaintiff's RFC, pertaining to "overhead reaching, reaching/pushing/pulling anything in excess of 20 pounds occasionally and 10 pounds frequently," do not fully account for Dr. Norwood's opinion that Plaintiff "cannot do repetitive pushing or pulling activities" or "any lifting with his left arm."  Tr. 335.  Accordingly, Dr. Norwood's opinion appears at odds with both the definition of light work and the ALJ's ultimate rendering of Plaintiff's RFC.

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). *See also Bliss v. Comm'r of Soc. Sec.*, 254 F. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight"). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008).

In her opinion, the ALJ reviewed the medical evidence, including the treatment notes of Dr. Norwood. However, in twice alluding to Dr. Norwood's February, 2008,

observations, the ALJ only states that "a physical exam revealed that scar tissue in his joint was tightening up and had restricted his motion," Tr. 13, and that Plaintiff's "range of motion had subsequently decreased and his symptoms increased, when seen [by Dr. Norwood] on February 4, 2008." Tr. 15.  Thus, the ALJ wholly failed to address Dr. Norwood's opinion about Plaintiff's inability to do "repetitive pushing or pulling activities" or "any lifting with his left arm."  The ALJ's omission of these aspects of Dr. Norwood's opinion, and a corresponding reconciliation of his opinion with the RFC found by the ALJ, is given additional context by the ALJ's apparent erroneous attribution of Dr. Rehak's May 5, 2008, observations and opinions to Dr. Norwood.  Twice in her opinion, *see* Tr. 13 & 14, the ALJ states that Dr. Norwood saw Plaintiff in May 2008 to examine his wrist.  However, Dr. Norwood was involved in the treatment of Plaintiff's shoulder, while Drs. Gudger and Rehak were involved with Plaintiff's wrists.  Tr. 329-334.  It was Dr. Rehak who examined Plaintiff's wrist in May, 2008, and, according to the ALJ, "released [Plaintiff] to return to work with restrictions noted earlier in the functional assessment."  Tr. 15.  Dr. Norwood issued no such opinion in May of 2008 which is included in the record before the Court.  The ALJ's erroneous attribution of such opinion to Dr. Norwood, occurring chronologically after Dr. Norwood's highly restrictive February, 2008, opinion, suggests an explanation for the ALJ's failure to lend more attention and credence to Dr. Norwood's February, 2008, opinion.

In this case, the ALJ did not expressly discount the opinion of Plaintiff's treating physician, Dr. Norwood.  Indeed, the ALJ purported to give "substantial weight" to the

opinion of Dr. Norwood.  Tr. 15.  However, as demonstrated above, the ALJ failed to address significant aspects of Dr. Norwood's most recent opinion and compounded this omission by attributing other physician opinion - which superficially could be thought to negate the earlier opinion[5] - to Dr. Norwood.  It is possible that the ALJ considered Dr. Norwood's opinion - despite failing to address it in her opinion - but determined that other evidence, including evidence of Plaintiff's daily activities, the ALJ's credibility determination, and the erroneous belief that, in May of 2008, Dr. Norwood again cleared Plaintiff to work, did not support such opinion.  However, to the extent the ALJ may have intended her opinion to reflect some rejection of Dr. Norwood's opinion about Plaintiff's limitations in February, 2008, it is plainly insufficient pursuant to the standards discussed above.  In failing to address the more salient aspects of Dr. Norwood's opinion, the ALJ failed to articulate any reason why she may have afforded such opinion less weight.

It is more likely that the ALJ intended no rejection of any aspect of Dr. Norwood's opinion and simply failed to properly consider the significance of all aspects of Dr. Norwood's February, 2008, opinion.[6]  This to, however, would be an error which requires remand.  Without an explanation of the weight afforded specifically to the more restrictive

---

[5]     It is important to remember that, while Dr. Rehak did indeed find that Plaintiff could "return to work with restrictions noted earlier in the functional assessment," Tr. 15, Dr. Rehak was rendering such opinion based upon his examination of Plaintiff's wrists.  Dr. Norwood's February, 2008, opinion remains the most recent medical opinion about Plaintiff's functional capacity limitations owing to his shoulder.

[6]     The ALJ's erroneous attribution of Dr. Rehak's opinion to Dr. Norwood supports this premise.

11

opinion articulated by Dr. Norwood, "it is impossible to determine whether it was even considered" and "the undersigned is unable to conduct a meaningful review of the ALJ's evaluation" of the opinion. *Tolbert v. Astrue*, 2010 WL 962714 at *16 (M.D. Fla. Mar. 16, 2010) (remanding to the ALJ for reconsideration of narrow aspect of medical source opinion where "'the ALJ gave significant weight' [to that source's opinions] generally"). *See also Fortes v. Astrue*, 2009 WL 734161 at *3 (S.D. Cal. Mar. 18, 2009) (remanding where ALJ relied on some aspects of medical source opinion but "did not discuss" other aspects of the opinion relevant to RFC). Accordingly, this matter is due to be remanded so that the ALJ may properly evaluate the opinion of Dr. Norwood to the extent it contrasts with the definition of light work and the RFC articulated by the ALJ.

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is supported by substantial evidence and is, therefore, REVERSED. A separate judgment will issue.

DONE this 8th day of June, 2010.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE